UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JEAN ANN HOLMAN, as Special Administrator of the Estate of RICHARD P. EDWARDS, Deceased, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) CAUSE NO.: 1:23-cv-433 |
| HANCOCK REGIONAL HOSPITAL d/b/a BRIDGEWATER HEALTHCARE CENTER, CAREY LEASING, CO., LLC d/b/a BRIDGEWATER HEALTHCARE CENTER, INNH EMP, LLC d/b/a COMMUNICARE FAMILY OF COMPANIES, and OMG IN MSTR LSCO, LLC d/b/a CFC MANAGED SERVICES OF INDIANA, | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

The Plaintiff, Jean Ann Holman, as Special Administrator of the Estate of Richard P. Edwards, Deceased, by counsel, files her Complaint and Demand for Jury Trial against Defendants, Hancock Regional Hospital d/b/a Bridgewater Healthcare Center, Carey Leasing Co., LLC d/b/a Bridgewater Healthcare Center, INNH EMP, LLC d/b/a CommuniCare Family of Companies, and OMG IN MSTR LSCO, LLC d/b/a CFC Managed Services of Indiana, for depriving and/or conspiring to deprive Plaintiff of rights secured under the Omnibus Budget Reconciliation Act of 1987 ("OBRA"), the Federal Nursing Home Reform Act ("FNHRA"), 42 U.S.C. § 1396, et seq., the Federal Nursing Home Regulations found in 42 C.F.R. Sec. 483, and

the Constitution of the United States of America, under color of state law, pursuant to 42 U.S.C. § 1983.

## I. PARTIES, JURISDICTION, and VENUE

1. JEAN ANN HOLMAN, as Special Administrator of the Estate of RICHARD P. EDWARDS, deceased, is an adult individual residing in Hamilton County, State of Indiana.

2. At the time of his death, RICHARD P. EDWARDS resided in Hamilton County, Indiana, within the geographical boundaries of the Southern District. At all times relevant to this action, Mr. Edwards resided within the geographic boundaries of the Southern District.

3. The facility commonly known as Bridgewater Healthcare Center, is a for-profit, long-term care, skilled nursing facility, located in Carmel, Hamilton County, Indiana, within the geographical boundaries of the Southern District of Indiana.

4. Defendant, Hancock Regional Hospital ("Hancock Regional Hospital") is a county hospital corporation headquartered in Greenfield, Indiana. At all times relevant to this action, Hancock Regional Hospital was the licensee of Bridgewater Healthcare Center.

5. Defendant, Carey Leasing Co., LLC ("Carey Leasing Co.") is a wholly-owned subsidiary of a privately held nursing home management company headquartered in Blue Ash, Ohio. At all times relevant to this case, Carey Leasing, Co., LLC has been under contract with Hancock Regional Hospital to manage and operate Bridgewater Healthcare Center.

6. Defendant, INNH EMP, LLC ("INNH EMP") is a privately held nursing home management company headquartered in Blue Ash, Ohio. At all times relevant to this case, INNH EMP, individually, or by and through one of its wholly-owned subsidiaries, has been under contract with Hancock Regional Hospital to manage and Bridgewater Healthcare Center.

7. Defendant, OMG IN MSTR LSCO, LLC ("OMG IN MSTR LSCO, LLC") is a privately held nursing home management company headquartered in Blue Ash, Ohio. At all times relevant to this case, OMG IN MSTR LSCO, LLC, individually, or by and through one of its wholly-owned subsidiaries, has been under contract with Hancock Regional Hospital to manage and Bridgewater Healthcare Center.

8. This case presents an issue of federal law, and therefore, subject matter jurisdiction is proper in this Court, pursuant to 28 U.S.C. § 1331.

## II.   FACTUAL ALLEGATIONS

9. On April 15, 2021, Mr. Edwards was admitted to Bridgewater Healthcare Center for skilled rehabilitation. At the time of Mr. Edwards' admission to Bridgewater Healthcare Center, he was alert with some confusion and poor safety awareness.

10. On April 16, 2021, nursing staff documented that Mr. Edwards tried getting out of bed on several occasions and succeeded once. A staff member had to sit with Mr. Edwards until he fell asleep.

11. On April 18, 2021, Mr. Edwards suffered a witnessed fall in his room while he was trying to get out of his wheelchair. This fall resulted in a skin tear to Mr. Edwards' right hand.

12. On April 22, 2021, facility staff documented that Mr. Edwards requires cues, reminders, and poor safety awareness.

13. On April 29, 2021, Mr. Edwards suffered a second fall, this time unwitnessed, in his room. This fall resulted in a skin tear and bruising to Mr. Edwards' right forearm. Nursing staff documented that patient had confusion.

14. On the morning of April 30, 2021, nursing staff documented that Mr. Edwards was disoriented, weakness to his right side, and slight drooping to the right side of his face. Mr.

Edwards was transferred to St. Vincent Carmel Hospital due to signs of stroke.

15. Upon arrival to St. Vincent Carmel Hospital, labs demonstrated that Mr. Edwards had mild dehydration and skin tears on his right forearm up to his hand. A head CT demonstrated old infarcts. Mr. Edwards was hydrated, and his mental status improved, and he was discharged back to Bridgewater Healthcare Center that evening.

16. In the early morning hours of May 1, 2021, a resident of Bridgewater Healthcare Center dialed 911 asking for help because facility staff was not responding to her call light. Officers from the Westfield Police Department were dispatched to the facility on a report of abuse/neglect. When the Westfield Police Department arrived, police officers used the video call button and knocked on the door for several minutes attempting to contact staff in order to gain entry into the facility.

17. After locating and speaking with the resident who made the 911 call, the police officer went in search of a Bridgewater staff member. The officer was unable to locate a staff member despite actively searching for over twenty minutes. Instead, he encountered dark hallways and flashing, unanswered call lights.

18. During the police officer's search for a staff member, he found Mr. Edwards moaning, bleeding, and naked, lying on the floor in his room. The police officer continued to search for a staff member with no luck. He finally called EMTs on his own.

19. EMTs arrived at the facility before a Bridgewater staff member was located. The staff member was unable to provide EMTs with necessary information related to his medical history. Mr. Edwards was transferred to St. Vincent Carmel Hospital for care and treatment.

20. The events described, supra, were captured by bodycam video of the officers responding to the 911 call.

21. St. Vincent hospital staff called Bridgewater to obtain additional information about Mr. Edwards medical history. No one answered the phone.

22. On May 5, 2021, Mr. Edwards was discharged from St. Vincent Carmel Hospital. Rather than returning to Bridgewater, Mr. Edwards was transferred to another facility for continued care.

23. The Indiana State Department of Health (ISDH) investigated the events surrounding Mr. Edwards May 1, 2021 injury. ISDH issued an Immediate Jeopardy citation related to the facility's failures.

24. The Westfield Fire Department EMTs, the Westfield Policy Department, the ISDH, and the St. Vincent Carmel hospital staff all documented genuine concern for the lack of care and treatment provided to the residents of Bridgewater during this timeframe.

25. The intentional understaffing of the facility effectively abandoned the residents of Bridewater, including Mr. Edwards.

26. Mr. Edwards passed away on May 24, 2021.

### III.   LEGAL ALLEGATIONS

**Count One: Deprivation of Rights Under Color of State Law (42 U.S.C. § 1983)**

27. Plaintiff incorporates by reference all the above paragraphs with the same force and effect as if set forth herein.

28. Defendant Hancock Regional Hospital is a municipal corporation owned by Shelby, Indiana, and is therefore "person . . . under color of any statute, ordinance, regulation, custom, or usage, of [the State of Indiana]", as that term is used in 42 U.S.C. § 1983.

29. Bridgewater Healthcare Center is wholly-owned by Defendant, Hancock Regional Hospital, and is therefore a "person . . . under color of any statute, ordinance, regulation, custom, or usage, of [the State of Indiana," as that term is used in 42 U.S.C. § 1983.

30. Defendant, Carey Leasing Co., LLC, manages Bridgewater Healthcare Center as an agent of Hancock Regional Hospital, and is therefore "person . . . under color of any statute, ordinance, regulation, custom, or usage, of [the State of Indiana]", as that term is used in 42 U.S.C. § 1983.

31. Defendant, OMG IN MSTR LSCO, LLC d/b/a CFC Managed Services of Indiana, manages Bridgewater Healthcare Center as an agent of Hancock Regional Hospital, and is therefore "person . . . under color of any statute, ordinance, regulation, custom, or usage, of [the State of Indiana]", as that term is used in 42 U.S.C. § 1983.

32. Defendant, INNH EMP, LLC d/b/a CommuniCare Family of Companies, operates, manages, and/or employs the facility staff of Bridgewater Healthcare Center as an agent of Hancock Regional Hospital, and is therefore and is therefore "person . . . under color of any statute, ordinance, regulation, custom, or usage, of [the State of Indiana]", as that term is used in 42 U.S.C. § 1983.

33. The 1987 Omnibus Budget Reconciliation Act ("OBRA"), the Federal Nursing Home Reform Act ("FNHRA"), which was contained within the 1987 OBRA, and the implementing regulations thereof, found at 42 C.F.R. § 483, *et seq.,* clearly and unambiguously create rights enforceable pursuant to 42 U.S.C. § 1983.

34. The Defendants' actions, individually and/or collectively, and in derogation of the above statute and regulations, have deprived Mr. Edwards of those rights by:

    a. failing to fully inform Mr. Edwards in advance of any changes in care or treatment that may affect his well-being;

b. failing to provide Mr. Edwards with reasonable accommodation of his individual needs and preferences;

c. failing to administer the facility in a manner that enabled it to use its resources effectively and efficiently to attain or maintain the highest practicable physical, mental, and psychosocial well-being of Mr. Edwards;

d. failed to operate and provide services in compliance with all applicable Federal, State, and local laws and regulations and with accepted professional standards and principles which apply to professionals providing services in such a facility;

e. failing to treat Mr. Edwards with respect and dignity and care in a manner and in an environment that promotes maintenance or enhancement of his quality of life, recognizing his individuality;

f. failing to fully inform Mr. Edwards of his total health status, including, but not limited to, his medical condition;

g. failing to inform Mr. Edwards and his representative of the right to participate in his treatment and supporting them in this right;

h. failing to immediately inform Mr. Edwards, consult with his physician, and notify his representatives when there was a significant change in his physical, mental, and/or psychosocial status in either life-threatening conditions or clinical complications), a need to alter treatment significantly;

i. failing to provide Mr. Edwards with a safe, clean, comfortable and homelike environment, including but not limited to providing treatment and supports for daily living safely;

j. by maintaining a policy, practice, or custom, that failed to care for Mr. Edwards in such a manner and in such an environment as to promote maintenance or enhancement of the quality of life of each resident;

k. by maintaining a policy, practice, or custom that failed to provide Mr. Edwards with nursing and related services and specialized rehabilitative services to attain or maintain his highest practicable physical, mental, and psychosocial well-being; that is, by repeatedly and regularly failing to have sufficient staff to care for Mr. Edwards;

l. failing to provide Mr. Edwards with services, to attain or maintain his highest practicable physical, mental, and psychosocial well-being;

m. failing to provide Mr. Edwards with pharmaceutical services (including procedures that assure the accurate acquiring, receiving, dispensing, and administering of all drugs and biologicals) to meet his needs;

n. failing to provide Mr. Edwards with an on-going program, directed by a qualified professional, of activities designed to meet his interests and the physical, mental, and psychosocial well-being;

o. Failing to provide Mr. Edwards with a nourishing, palatable, well-balanced diet that met his daily nutritional and special dietary needs, taking into consideration his preferences;

p. failing to employ sufficient staff with the appropriate competencies and skills sets to carry out the functions of the food and nutrition service, taking into consideration resident assessments, individual plans of care and the number, acuity and diagnoses of the facilities resident population; and

q. failing to ensure Mr. Edwards received and the facility provided food and drink that was palatable, attractive, and at a safe and appetizing temperature and drinks, including water and other liquids consistent with resident needs and preferences and sufficient to maintain Mr. Edwards' hydration.

35. The Defendants' actions were intentional, willful, and in reckless disregard for Mr. Edwards's rights.

36. As a result of the Defendants' unlawful actions, Mr. Edwards suffered damages including, but not limited to, rights' violations, mental status changes, lacerations, contusions, pain, suffering, loss of dignity and respect, diminished quality of life, all of which caused or contributed to cause his premature death.

### Count Two: common law negligence and negligence *per se*

37. Plaintiff incorporates by reference all the above paragraphs with the same force and effect as if set forth herein.

38. At all relevant times, Mr. Edwards was lawfully upon the premises of Defendants' nursing facility.

39. Defendants owed Mr. Edwards common law and statutory duties of reasonable care and supervision.

40. Defendants were a common carrier and as such, owed facility residents, including Mr. Edwards, a non-delegable duty of care.

41. Defendants owed Mr. Edwards a duty to protect him from reasonably foreseeable harms.

42. Defendants breached these duties, including, but not limited to, as described above, and below.

43. Defendants knew or should have known of the risk of harm their business decision to understaff their nursing facility posed to Mr. Edwards.

44. Defendants were aware of Mr. Edwards' vulnerability based on his medical conditions.

45. Despite their knowledge of the risk, Defendants failed to protect Mr. Edwards from known risks of harm resulting from understaffing their nursing facility.

46. Defendants failed to take reasonable measures to prevent Mr. Edwards from harm. This failure directly and proximately increased the risk of harm to Mr. Edwards and includes failing to appropriately staff their nursing facility, failing to supervise residents in the facility, failing to supervise facility staff, failure to train facility staff, failure to implement and enforce policies and procedures necessary for resident health and safety, failure to appropriately budget for staff and resources, and failing to intervene when it was known or should have been known that the facility was understaffed.

47. As a direct and proximate result of the Defendants' negligence, Plaintiff has sustained damages, specifically, pain and suffering, physical, emotional, and psychological distress, and premature death. Mr. Edwards surviving spouse, Margaret J. Edwards, has suffered loss of his love, care, affection, future support, and services as a result.

48. To the extent Defendants violated federal and state statutes and such statutory violations proximately caused or contributed to harm Mr. Edwards and/or his surviving spouse, Defendants are liable for negligence *per se*.

## IV. RESPONDEAT SUPERIOR

49. The Defendants are responsible for and as such ratified the acts, omissions and customs of all administrators, personnel, staff, contractors, and agents, in regard to services provided to and on behalf of the Plaintiff, pursuant to the theory of Respondeat Superior.

## V. AGENCY

50. At and during the time of the acts and/or omissions complained of herein, any acts and/or omission committed by an agent, representative or employee of the Defendants occurred within the scope of the actual or apparent authority of such person on behalf of Defendants.

51. Said Defendants are therefore liable to Plaintiff for the acts and/or omissions of any such agent, representative, or employee complained of herein by virtue of such agency relationship.

## VI. RELIEF REQUESTED

WHEREFORE, Plaintiff, JEAN ANN HOLMAN, as Special Administrator of the Estate of RICHARD P. EDWARDS, Deceased, by counsel, respectfully requests that the Court enter judgment in her favor, and against the Defendants, and provide the following relief:

52. Order the Defendants, jointly and severally, to pay actual damages in an amount sufficient to compensate for any actual out-of-pocket costs, including but not limited to any subrogation by any insurance company or government entity;

53. Order the Defendants, jointly and severally, to pay compensatory damages for the physical and mental pain and suffering, emotional distress, humiliation, and embarrassment caused by Defendants' actions;

54. Order the Defendants to pay punitive damages, for its willful, reckless and malicious actions;

55. Order the Defendants, jointly and severally, to pay pre- and post-judgment interest on all sums awarded;

56. Order the Defendants, jointly and severally, to pay reasonable attorney fees and costs of litigating this action; and

57. Order the Defendants, jointly and severally, to provide any and all other relief to which the Plaintiff may be entitled.

## VII. PUNITIVE DAMAGES

58. The acts and omission of the Defendants shock the conscious and satisfy the criteria for punitive damages.

## REQUEST FOR JURY TRIAL

Plaintiff, JEAN ANN HOLMAN, as Special Administrator of the Estate of RICHARD P. EDWARDS, Deceased, by counsel, hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

GARAU GERMANO, P.C.

/s/ Ashley N. Hadler
Ashley N. Hadler, #29939-49
Attorney for Plaintiff

GARAU GERMANO, P.C.
3710 Washington Boulevard
Indianapolis, Indiana 46205
(317) 822-9530 Phone
(317) 822-9531 Fax
ahadler@g-glawfirm.com